# United States Bankruptcy Court
# for the District of Oregon

**Frank R. Alley, III, Judge**
Barbara D. Ivey, Judicial Assistant
Lee D. Brice, Law Clerk



151 West Seventh Ave., Suite 300
Post Office Box 1335
Eugene, Oregon 97440
(541) 465-6767
FAX: (541) 465-6898

June 19, 2006

Mr. Neil Wm. Gray
PO Box 100
Talent, OR 97540

Mr. Stephen Tweet
PO Box 968
Salem, OR 97308

RE:   NEIL WM. GRAY v. EDUCATIONAL CREDIT MANAGEMENT CORP.
      Adversary Proceeding No. 05-6220-fra

Gentlemen:

Over time Mr. Gray became indebted on account of various student loans in the approximate sum of $74,000. These loans have been acquired by Defendant ECMC. Mr. Gray has commenced an adversary proceeding seeking a judgment declaring that it would be undue hardship to require him to repay these loans, and that they should be discharged in his Chapter 7 bankruptcy pursuant to 11 U.S.C. § 523(a)(8). The matter was heard in Medford, Oregon, on June 15, 2006. Having carefully considered the evidence, testimony and argument of the parties I conclude that Mr. Gray has sustained his burden of proof and that his student loan debts should be discharged.

Mr. Gray is, at present, marginally employed at an old trailer park/spa near Ashland, Oregon, where he is granted a space for his trailer and access to facilities in return for regular performance of various maintenance jobs. He estimates the value of the space rental to be $375 per month. The space is occupied with an old Airstream trailer which he owns and lives in. His cash income consists of $623 per month Social Security disability payments and $149 per month in food stamps. His monthly budget, exclusive of student loan payments, requires expenditures of roughly $1,390 per month. Scheduled student loan payments are $477.29 per month. While the budget might be subject to criticism in some respects, even with reasonable adjustment it would clearly exceed the $772 cash per month available to Mr. Gray.

Mr. Gray is, for the purposes of the Court's analysis, incapable of acquiring and sustaining employment that would generate income greater than that described above. The Court has the benefit of a detailed psychological analysis prepared for Mr. Gray, and the testimony of the author of the report, a clinical psychologist licensed in Oregon. The following excerpt from the report summarizes the psychologist's conclusions:

> The examination would find that [Mr. Gray] has the capacity to work under only the most tightly restricted conditions. His history is consistent with a personality-disordered condition of moderate to severe proportions. His work performance would suggest that he seems virtually incapable of relating to others.... I therefore believe that he is competent to work in isolated settings entailing natural resources. He would need to have virtually no regular public contact, and supervision would need to be extremely limited. He would need to be answerable to presumably one individual with whom he checked in on a regular basis, but it would be excessive and overtaxing for [Mr. Gray] if this individual had regular and frequent contact – more so, [Mr. Gray] would best be one who would be sent off to remote locations, providing data on a periodic basis. In absence of such a job opportunity, I would not see [him] as capable of competitive, gainful employment under ordinary circumstances. It is possible that medication could improve this to some extent (e.g. low-grade antipsychotics could improve this to some extent....); however, I would not expect remarkable improvement in this profile that is largely character driven.

Mr. Gray testified that he has made extensive efforts to seek employment as a hydrologist, an area in which he has extensive training. All of his efforts to obtain employment, even at an entry level suitable to someone "half my age," have failed. Previous work history has demonstrated a series of failures and firings. It is clear that both the inability to obtain employment, and the lack of success in sustaining jobs in the past are related to the same source: Mr. Gray's profound psychological inability to work with others.

Assessment of undue hardship in the context of § 523(a)(8) is governed by the so-called Bruner test, first set out in Bruner v. New York State Higher Education Services Corp. (In re Bruner), 831 F.2d 395, 396 (2nd Cir. 1987), and adopted by the Court of Appeals for the Ninth Circuit in United Student Aid Funds, Inc. v. Pena (In re Pena), 155 F.3d 1108, 1112 (9th Cir. 1998).

Under the Bruner test the debtor must prove, by a preponderance of the evidence, each of three elements:

1. That the debtor cannot maintain, based on current income and expenses, a minimal standard of living for himself if forced to repay the loans;

      2. That additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loan; and

      3. That the debtor has made good faith efforts to repay the loans. Pena, *supra* at 1111, In re Saxman, 325 F.3d 1168, 1173 (9th Cir. 2003).

      The first test is clearly established by the evidence in this case. Mr. Gray's income is barely sufficient to sustain even a marginal lifestyle. His present financial circumstances clearly cannot sustain the additional burden of student loan payments.

      The evidence further establishes Mr. Gray's current economic circumstances are directly attributable to his inability to sustain employment. This disability is, as the psychologist's report states, character driven: as the doctor put it, these problems are "the stripes on his coat." He does not believe that psychotherapy with effect a change in the plaintiff's condition.

      The third element of the test is the most difficult to assess in this case. Defendant relies on the fact that the plaintiff has declined to enroll any plan available to reduce the burden of loan payments, such as the Income Contingent Repayment Plan. Courts have in the past found that failure to apply for such assistance may supply the basis for a finding that the third Bruner test has not been satisfied. See In re Birrane, 287 B.R. 490 (9th Cir. BAP 2002). It has been pointed out in the past (including cases before this Court) that a catch-22 exists: the plaintiff is expected to enroll the ICRP or a similar program, but at the same time enrollment applications are not accepted from parties who are actively litigating the dischargeability of the loan. This problem has been overcome in the past on the strength of ECMC's undertaking that, if the court finds that the debt may not be discharged, the plaintiff/debtor is guaranteed access to the repayment program.

      The Court cannot find that that is the case here. At the opening of the trial counsel for ECMC advised the Court that the rules have changed, and that enrollment in the Income Contingent Repayment Plan would not be permitted for certain loans. The Court was advised that Mr. Gray's situation fell into this category, and that an application could not be accepted after June 30, 2006, less than two weeks away. While promising that every effort would be made to qualify Mr. Gray for the ICRP, counsel was candid enough to acknowledge that there would be no guarantee. Without that guarantee the Court is disinclined to hold that failure to enroll in such a program should be held against the Plaintiff.

      It appears that the Plaintiff has, when funds are available, made efforts to make loan payments. He further argues that his extensive efforts to gain employment should be taken into account, and the Court agrees.

      The foregoing discussion constitutes the Court's findings of fact and conclusions of law. A judgment consistent with the Court's analysis will be entered: a copy is included with this opinion letter.

                                               Very truly yours,

                                               FRANK R. ALLEY, III
                                               Bankruptcy Judge

FRA:bdi

Enclosure